UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

P.G.,

Plaintiff,

-v- 5:21-CV-388

JEFFERSON COUNTY, NEW YORK, COLLEEN M. O'NEILL, As the Sheriff of Jefferson County, New York, BRIAN R. MCDERMOTT, As the Undersheriff of Jefferson County, and MARK WILSON, As the Facility Administrator of Jefferson County Correctional Facility,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| NEW YORK CIVIL LIBERTIES UNION<br>Attorneys for Plaintiff<br>125 Broad Street, 19th Floor<br>New York, NY 10004 | ANTONY P.F. GEMMELL, ESQ.<br>MOLLY BIKLEN, ESQ.<br>TERRY DING, ESQ. |
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br>Attorneys for Plaintiff<br>915 15th Street NW, 7th Floor<br>Washington, DC 20005 | JOSEPH LONGLEY, ESQ. |

BARCLAY DAMON LLP
Attorneys for Defendants
125 East Jefferson Street
Syracuse, NY 13202

TERESA M. BENNETT, ESQ.

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

## I. INTRODUCTION

Plaintiff P.G.[1] ("P.G." or "plaintiff") is a recovering opioid user. He is currently on probation. He receives daily methadone treatment from Credo Community Center ("Credo"), a clinic in Watertown, New York. Although it is a controlled substance, methadone is approved by the U.S. Food and Drug Administration ("FDA") to treat Opioid Use Disorder ("OUD"), a medical condition "characterized by compulsive use" of opioid painkillers.

On April 5, 2021, P.G. filed this civil rights action against Jefferson County (the "County"), Sheriff Colleen M. O'Neill ("Sheriff O'Neill"), Undersheriff Brian R. McDermott ("Undersheriff McDermott"), and Jail Administrator Mark Wilson ("Administrator Wilson") (collectively "defendants").[2] Plaintiff claimed to "face[ ] imminent detention at the [County] jail" because of a pending probation violation. Plaintiff alleged the

[1] Plaintiff sought permission to seal his name in an effort to avoid the "powerful and pervasive stigma" associated with opioid use disorder. Dkt. No. 14. That request was granted on May 24, 2021. Dkt. No. 31.

[2] The individual defendants are sued in their official capacities.

County refuses to provide methadone treatment to non-pregnant people held at the Jail. Plaintiff's complaint asserts that this policy violates his rights under the Americans with Disabilities Act ("ADA"), the Constitution, and related state law.

On April 29, 2021, P.G. moved under Federal Rule of Civil Procedure ("Rule") 65 to "enjoin[ ] the jail from enforcing its blanket methadone ban against him until the Court has assessed the ban's lawfulness." The motion was fully briefed and oral argument was heard on July 8, 2021 in Utica New York. Following oral argument, the Court reserved decision and directed defendants' counsel to immediately notify the Court if plaintiff entered into County custody.

On September 3, 2021, at 6:35 p.m., the Court received from defendants a letter brief in which counsel stated that "Plaintiff was detained late this afternoon, and is or will imminently be committed to the custody of the County of Jefferson." Dkt. No. 44.

Thereafter, plaintiff filed a letter brief in which his counsel explained that defendants transported plaintiff to Credo to receive his Saturday dose of methadone treatment, and that defendants represented that plaintiff would be transported to Crouse Hospital in Syracuse to receive his Sunday and Monday doses of treatment. Dkt. No. 46.

## II. BACKGROUND

P.G. submitted a substantial amount of evidence in support of his request for relief. Dkt. Nos. 16–21. This includes declarations from (1) plaintiff; (2) plaintiff's girlfriend; (2) the medical director of Credo; (4) the head of outpatient services at Credo; and (5) a retained expert on addiction medicine. *Id.* In opposition, defendants have submitted an affidavit with exhibits from County Attorney David Paulsen and a declaration with exhibits from attorney Teresa M. Bennett. Dkt. Nos. 29, 29-7.

All of this material has been considered and the particularly relevant portions will be briefly summarized below. Although defendants dispute the existence of any so-called "ban" on methadone treatment, their opposition materials do not directly dispute plaintiff's evidentiary showing.[3]

P.G. is a 35-year-old Watertown resident who works as a driver for a food delivery service. He first became addicted to opioids in 2005, when some of his college friends let him try OxyContin. When the pills became too expensive, plaintiff switched to heroin. He soon dropped out of college and began committing low-level crimes in an effort to fund his addiction.

[3] An independent review of the submissions did not reveal any genuine disputes over the essential facts. *See, e.g.*, *Matter of Defend H20 v. Town Bd. of Town of E. Hampton*, 147 F. Supp. 3d 80, 96–97 (E.D.N.Y. 2015) (discussing circumstances in which an evidentiary hearing on a preliminary injunction is unnecessary). Accordingly, while the few disputes over factual matters have been noted, it is not necessary to resolve them to decide the present issues.

In 2011, P.G. was arrested for petit larceny and drug possession. He spent six months in prison, where he went through severe withdrawal. Plaintiff was in and out of jail several more times over the next few years. While he was incarcerated in Onondaga County in 2016, the jail refused to provide him with Suboxone (a different kind of treatment for OUD) and he again suffered severe withdrawal. Plaintiff relapsed, overdosed, and almost died soon after he was released from custody.

Finally, after years of failed attempts to get clean using other treatments, P.G. found one that worked for him: methadone. He began treatment at the Conifer Park Clinic in Liverpool. However, in late 2018, the Credo Community Center opened in Watertown and plaintiff was able to continue his treatment much closer to home. Daniel Pisaniello, M.D., plaintiff's treating physician and the Medical Director at Credo, has attested that methadone is "medically necessary" for plaintiff's rehabilitation.

P.G.'s recovery has not been without setbacks. For instance, plaintiff describes several occasions on which he relapsed after his methadone treatment was disrupted. As relevant here, plaintiff was held at the Jefferson County Jail for about six weeks in 2019. Because the County Jail refused to provide him with his methadone treatment at that time, plaintiff suffered severe withdrawal, "including pain throughout [his] body, nausea, vomiting, diarrhea, anxiety, and sleeplessness."

Recently, P.G. has been taking a lower-than-normal dosage (60mg) of his methadone in anticipation of being arrested on the probation charge pending against him. Although it is far lower than his normal dosage (140mg) of methadone and he still experiences cravings for opioids, plaintiff believes it will be "easier" to handle a forced withdrawal from the lower dosage in the event he is cut off from treatment at the County Jail. Dr. Pisaniello states that this is a common (if unfortunate) coping strategy used by people in plaintiff's position.

Caryn White, LCSW-R, the Director of Credo's Outpatient Services, has submitted a declaration in which she attests that Credo has successfully provided methadone treatment to pregnant women at the Jefferson County Jail. According to Director White, County Jail staff either (1) transport these patients to Credo to receive treatment directly or (2) pick up methadone doses from Credo and administer them to the patients inside the Jail.

Director White attests that, based on her experience, the County Jail does not offer this treatment accommodation to non-pregnant people. However, according to Director White, "Credo is willing and able to continue providing treatment to [plaintiff] while he is in custody."

On April 2, 2021, P.G.'s attorney sent a letter to the Sheriff's Office requesting that the County Jail accommodate plaintiff's disability; *i.e.*, his opioid use disorder, by permitting him to continue his daily methadone

therapy. In response, the County denied the existence of "an explicit or implicit policy banning methadone or medication for opioid use disorder," but refused to "make a firm commitment" regarding access to methadone treatment until after plaintiff was detained and medically examined by staff at the County Jail.

County Attorney David Paulsen has also submitted an affidavit in which he explains that the County actually agreed to transport P.G. to Credo on a daily basis so that he could continue his treatment. The apparent sticking point with this arrangement is that Credo is not open on Sundays or holidays. Credo wants to give plaintiff a "take-home" dose of methadone to "self-administer" on those days.

Defendants object to this approach as a violation of state and federal law as well as the collective bargaining agreement with the correction officers' union. In defendants' view, this "take home" dosing arrangement would require Jail staff—who are not authorized to possess or dispense methadone—to distribute a narcotic inside the Jail. However, defendants did not explain how this closed-on-Sundays-and-holidays problem has been handled by Jail staff for the pregnant women who have received treatment.

## III. <u>LEGAL STANDARD</u>

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Thus,

the party seeking injunctive relief must carry the burden to demonstrate "by a clear showing" that the necessary elements are satisfied. *V.W. ex rel. Williams v. Conway*, 236 F. Supp. 3d 554, 581 (N.D.N.Y. 2017).

Generally speaking, a movant must show: (1) a likelihood of irreparable harm; (2) either a likelihood of success on the merits or sufficiently serious questions as to the merits plus a balance of hardships that tips decidedly in their favor; (3) that the balance of hardships tips in their favor regardless of the likelihood of success; and (4) that an injunction is in the public interest. *Page v. Cuomo*, 478 F. Supp. 3d 355, 362–63 (N.D.N.Y. 2020).

However, a heightened standard applies where the requested injunction (1) is "mandatory"; *i.e.*, it would alter the status quo; or (2) "will provide the movant with substantially all of the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *Page*, 478 F. Supp. 3d at 363. When either condition is met, the movant must show a "clear" or "substantial" likelihood of success on the merits, and must make a "strong showing" of irreparable harm.[4] *Id.*

[4] "Prohibitory injunctions maintain the status quo pending resolution of the case; mandatory injunctions alter it." *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36–37 (2d Cir. 2018). However, "courts have rightly criticized this attempt at binary classification, since the distinction between "mandatory" and "prohibitory" injunctive relief usually proves to be more semantic than substantive. *Page*, 478 F. Supp. 3d at 363.

## IV. DISCUSSION

P.G. contends that defendants' refusal to provide him with daily methadone treatment at the County Jail violates his rights under the ADA and the Constitution. Plaintiff argues that injunctive relief is warranted because he will suffer irreparable, life-threatening harm if he is cut off from his methadone treatment during the pendency of this litigation. According to plaintiff, the unrebutted evidence from his treating physician at Credo establishes that any alternative treatment modalities (*e.g.*, Suboxone) that the County Jail might offer him are medically and constitutionally insufficient.

### A. Irreparable Harm

"The showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction." *Conway*, 236 F. Supp. 3d at 589 (citation omitted). "The concept of irreparable harm has been described as certain and imminent harm for which a monetary award does not adequately compensate." *Id.* (cleaned up).

Upon review, P.G. has made a "clear" showing on this threshold requirement. The uncontested evidence established that withdrawal from methadone treatment is excruciatingly painful, will cause a number of severe physical and mental symptoms, and will place plaintiff at a significantly

heightened risk of relapse and death. Pl.'s Mem., Dkt. No. 15-1 at 13–15.[5] In short, this amounts to a "strong showing" of irreparable harm. *Smith v. Aroostook County*, 376 F. Supp. 3d 146, 161–62 (D. Me. 2019) (finding this element satisfied based on a similar evidentiary showing), *aff'd*, 922 F.3d 41 (1st Cir. 2019).

**B. <u>Likelihood of Success on the Merits</u>**

P.G. has asserted claims under Title II of the ADA and under the Eighth and Fourteenth Amendments. To warrant preliminary injunctive relief, plaintiff must show a substantial likelihood of success on the merits of at least one of these claims. *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 618 (S.D.N.Y. 2018).

**1. <u>Title II of the ADA</u>**

P.G. contends that the County Jail's refusal to provide him with treatment violates Title II of the ADA, either because it is facially discriminatory against people who suffer from opioid use disorder or because it amounts to a failure to accommodate his opioid use disorder.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity,

[5] Pagination corresponds to CM/ECF.

or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. As the Second Circuit has explained, "[a] plaintiff may base [a] Title II claim on any of three theories of liability: disparate treatment (intentional discrimination), disparate impact, or failure to make a reasonable accommodation." *Tardif v. City of N.Y.*, 991 F.3d 394, 404 (2d Cir. 2021).

To state a claim for relief under Title II of the ADA, a plaintiff must establish: "(1) he is a qualified individual with a disability; (2) the defendant is subject to [the ADA]; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by defendants because of his disability." *Disabled in Action v. Bd. of Elections in City of N.Y.*, 752 F.3d 189, 196–97 (2d Cir. 2014) (cleaned up).

Upon review, P.G. is substantially likely to succeed on the merits of this claim. Plaintiff counts as an "individual with a disability" because he has been diagnosed with opioid use disorder and is participating in a supervised rehabilitation program. Plaintiff is also "eligible" to receive medical services while he is incarcerated. *See generally Estelle v. Gamble*, 429 U.S. 97 (1976). And the County Jail is a "public entity" within the meaning of Title II of the ADA. *Hamilton v. Westchester County*, --F.4th--, 2021 WIL 2671311, at *4 (2d Cir. June 30, 2021) (applying Title II against county jail).

In opposition, defendants contend that P.G. might be given other medications that might alleviate his withdrawal symptoms. However, a reasonable accommodation must be effective. *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). Effectiveness is a fact-specific question. *Id.*

P.G.'s counsel has represented to the Court that defendants took steps to accommodate plaintiff's need for treatment over the Labor Day weekend. But the unrebutted evidence in the record establishes that other forms of medical treatment have been tried and proven ineffective in treating plaintiff. His treating physician has prescribed methadone and concluded that it is medically necessary. For now, the actual evidence in the record—through Director White's knowledge of the Jail's general practices and from plaintiff's affidavit about his specific past experience at the Jail—establishes that the County does not provide methadone to non-pregnant people.

Under these circumstances, a refusal to guarantee access to methadone treatment likely violates the ADA. *Cf. Smith*, 376 F. Supp. 3d at 159–60 ("The Defendants' out-of-hand, unjustified denial of the Plaintiff's request for her prescribed, necessary medication . . . is so unreasonable as to raise an inference that the Defendants denied the Plaintiff's request because of her disability."). Accordingly, plaintiff has made a clear showing that he is substantially likely to succeed on the merits of this claim.

### 1. 42 U.S.C. § 1983 – Fourteenth Amendment[6]

Alternatively, P.G. contends that the County Jail's refusal to provide him with treatment amounts to constitutionally inadequate medical care in violation of the Fourteenth Amendment.

To state a claim for deliberate indifference to serious medical needs, a plaintiff must establish: (1) the alleged deprivation is "sufficiently serious"; and (2) the defendant acted with deliberate indifference to that serious medical need. *Charles v. Orange County*, 925 F.3d 73, 86–87 (2d Cir. 2019). Where, as here, the plaintiff is a pre-trial detainee, the "deliberate indifference" element is measured in objective, plaintiff-friendly terms: a plaintiff must show that defendants knew, or should have known, that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health. *Id.* at 87.

Upon review, P.G. is substantially likely to succeed on the merits of this claim. Plaintiff has established that opioid use disorder is a chronic brain disease and that opioid withdrawal has been recognized as an "objectively" serious medical condition that, according to plaintiff's treating physician, must be treated with methadone. *See, e.g.*, *Alvarado v. Westchester County*,

[6] A pre-trial detainee's conditions-of-confinement claim falls under the Fourteenth Amendment, not the Eighth. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). As plaintiff notes, the Second Circuit has not yet decided whether this standard should apply to probationers. But at this point the probation violation is only an allegation.

22 F. Supp. 3d 208, 217 (S.D.N.Y. 2014). Plaintiff has also established that defendants are on notice that refusing access to this medically necessary treatment exposes plaintiff to serious risk of harm to his health.

In opposition, defendants make two arguments: first, that there is no constitutional right to methadone treatment; and second, that other medications can manage plaintiff's symptoms in a way that passes constitutional muster. These arguments must be rejected for now because, as plaintiff points out in his reply, defendants have failed to support these assertions with the kind of medical testimony or other evidence that might rebut or place in dispute his own submissions. Accordingly, plaintiff has made a clear showing that he is substantially likely to succeed on the merits of this claim.

**C. <u>The Balance of Hardships & The Public Interest</u>**

P.G. has also satisfied these remaining elements. Where, as here, a governmental defendant is the party opposing relief, "balancing of the equities merges into [the court's] consideration of the public interest." *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 278 (2d Cir. 2021). First, the public interest lies with enforcing the Constitution and federal law. *See, e.g.*, *Paykina ex rel. E.L. v. Lewin*, 387 F. Supp. 3d 225, 245 (N.D.N.Y. 2019) (Sannes, J.) ("The public interest generally supports granting a preliminary injunction where . . . a plaintiff has established a clear likelihood of success

on the merits and made a showing of irreparable harm."). Second, the balance of hardships clearly favors plaintiff. He will personally benefit from continuing to receive medically necessary treatment. The hardship to defendants is comparatively minimal, especially in light of Director White's uncontested assertion that the Jail has already worked with Credo to provide treatment to pregnant women.

## V. CONCLUSION

"In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of [ ] prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997).[7] However, the record establishes that the County Jail has been able to provide methadone treatment to pregnant women with no apparent security problems or larger policy impact. The preliminary relief awarded to P.G. will be narrowly drawn in a way that extends no further than necessary to provide an effective remedy while leaving the important questions of prison management to defendants themselves.

Therefore, it is

ORDERED that

1. Plaintiff's motion for a preliminary injunction is GRANTED;

---

[7] Under the Prison Litigation Reform Act, preliminary injunctive relief in any civil action with respect to prison conditions must be narrowly drawn, extend no further than necessary to correct the harm, and be the least intrusive means necessary. 18 U.S.C. § 3626(a)(2).

2. Defendants shall provide plaintiff with his daily prescribed methadone during his period of incarceration at the Jefferson County Jail in a way deemed appropriate in light of security needs, such as (a) providing the medication to plaintiff in the Jail, (b) taking plaintiff into the community on a daily basis to receive his medication, or (c) releasing plaintiff on medical furlough if the Jail is unable to accommodate his daily medical needs.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated: September 7, 2021
Utica, New York.