UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
P.G.,

                 Plaintiff,

      -v-                                     5:21-cv-388

JEFFERSON COUNTY, NEW YORK;
COLLEEN M. O'NEILL, as the Sheriff of
Jefferson County, New York; BRIAN R.
MCDERMOTT, as the Undersheriff of Jefferson
County, New York; and MARK WILSON, as
the Facility Administrator of the Jefferson
County Correctional Facility,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                   OF COUNSEL:

NEW YORK CIVIL LIBERTIES        ANTONY P.F. GEMMELL, ESQ.
   UNION FOUNDATION           TERRY T. DING, ESQ.
*Attorneys for Plaintiff*            GABRIELLA M. LARIOS, ESQ.
125 Broad Street, 19th Fl.          MOLLY K. BIKLEN, ESQ.
New York, New York 10004

AMERICAN CIVIL LIBERTIES        TAMMIE GREGG, ESQ.
UNION NATIONAL PRISON PROJECT
*Attorneys for Plaintiff*
915 15th Street NW, 7th Floor
Washington, D.C. 20005

BARCLAY DAMON LLP             TERESA M. BENNETT, ESQ.
*Attorneys for Defendants*         KAYLA A. ARIAS, ESQ.
125 East Jefferson Street
Syracuse, New York 13202

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On September 7, 2021, this Court entered an order (the "PI Order"), Dkt. No. 47, granting plaintiff P.G.'s motion for a preliminary injunction against defendants Jefferson County, New York (the "County"), County Sheriff Colleen M. O'Neill, County Undersheriff Brian R. McDermott, and County Correctional Facility Administrator Mark Wilson (together "defendants").

In short, P.G. sought to preliminarily enjoin defendants from interrupting or otherwise denying him access to his prescribed methadone treatment ("MOUD") while he was incarcerated at Jefferson County Correctional Facility (the "Jail"). Defendants opposed, asserting that the Jail does not maintain a ban on methadone treatment for non-pregnant people. The Court held oral argument and ultimately entered the PI Order.

Now, P.G. seeks to recover his fees and costs arising from this litigation. Specifically, plaintiff seeks $153,783.45 in attorney's fees for the work done by his two public interest legal organizations, as well as $7,786.68 in costs. Defendants oppose and also move for summary judgment. The motions have been fully briefed, and the Court considers them on the basis of the parties' submissions without oral argument.

2

## II. <u>DISCUSSION</u>

As noted, P.G. seeks to recover attorney's fees and costs associated with his preliminary injunction. Defendants oppose and also move for summary judgment. The Court addresses each motion in turn.

### A. **Plaintiff's Motion for Fees**

1. <u>Legal Standard</u>

Both the ADA and Section 1983 authorize courts to award a "prevailing party" reasonable attorney's fees and costs. *See* 42 U.S.C. § 12205 (ADA); 42 U.S.C. § 1988(b) (Section 1983). "[T]o qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the merits of his claim." *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997) (citing *Farrar v. Hobby*, 506 U.S. 103, 109 (1992)). A party who "receives a … preliminary injunction but never obtains a final judgment" is the prevailing party "if the court's action in granting the preliminary injunction is governed by its assessment of the merits." *Id*.

Fees are not warranted, however, if the court did not base its determination to award interim relief on the merits. *Haley*, 106 F.3d at 483. "A determination of whether a court's action is governed by its assessment of the merits 'requires close analysis of the decisional circumstances and reasoning underlying the grant of preliminary relief.'" *Id*. (citation omitted). Furthermore, if an injunction "is not clearly based on the merits, a court

should not resolve the uncertainty in favor of a finding that plaintiff prevailed." *Id.* (citation omitted).  Similarly, a request for attorney's fees may be properly denied if a party's success is "*de minimis* or technical." *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994) (citation omitted).

"The burden rests on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." *Krause v. Kelahan*, 2022 WL 306365, at *1 (N.D.N.Y. Feb. 2, 2022) (citation omitted). Still, "the determination of fees should not result in a second major litigation," and in evaluating an application, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Id.* (citation omitted); *see also Restivo v. Hessemann*, 846 F.3d 547, 589 (2d Cir. 2017).

2. Discussion

P.G. requests fees in the amount of $153,783.45 and $7,786.68 in costs. Defendants oppose, claiming that these fees are unreasonable, that plaintiff does not qualify as a prevailing party, and that the relief this Court granted plaintiff was *de minimis*.

"In awarding attorney's fees, the district court is to determine the 'presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours.'" *Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 25 (N.D.N.Y. 2015) (citing *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 289 (2d Cir. 2011)).

4

The first component of the reasonable-fee calculation is determining a reasonable hourly rate, or "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008). In determining a reasonable hourly rate, district courts "consider[] all pertinent factors, including the *Johnson* factors." *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019); *see also Brooks v. Roberts*, 501 F. Supp. 3d 103, 112 (N.D.N.Y. 2020).[1] And the Second Circuit's "'forum rule' generally requires use of 'the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.'" *Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 290 (2d Cir. 2011).

Upon review, P.G. has submitted sufficient evidence supporting his attorneys' requested rates. The rates, which range from $165 to $300 per hour, are consistent with those that courts in this district have awarded in other civil rights litigations for attorneys with comparable experience levels. *See, e.g. Citizens Bank, N.A. v. Krolak*, 2019 WL 3304556, at *4 (N.D.N.Y.

---

[1] The "*Johnson* factors," developed by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id*. at 717-19.

July 23, 2019) (awarding hourly rate of $325 for attorney with 18 years'

experience and $275 for attorney with 10 years' experience, and noting these

were "rates in the middle end of the hourly rate range"); *Moore v. Keller*, 2021

WL 5493022, at *3-4 (N.D.N.Y. Nov. 22, 2021) (hourly rate of $200 for

attorneys with between five and ten years' experience and $150 for attorneys

with less than two years' experience); *Perez v. Cnty. of Rensselaer*, 2021 WL

3022115, at *2 (N.D.N.Y. July 16, 2021) (hourly rate of $165 for recently

admitted attorney).[2]

The *Johnson* factors also support P.G.'s requested rates.  Among other

things: (i) plaintiff's counsel obtained a substantial degree of success; (ii) this

litigation involved novel and complex legal issues that no court in this district

has previously addressed; (iii) plaintiff's counsel is highly experienced; and

(iv) this case involved significant time and labor.

P.G. has also submitted sufficient evidence supporting the hours his

attorneys worked.  In evaluating the reasonableness of the hours expended

on a case, "[t]he relevant inquiry for the court 'is not whether hindsight

vindicates an attorney's time expenditures, but whether, at the time the work

was performed, a reasonable attorney would have engaged in similar time

---

[2] Notably, plaintiff's attorneys seek in-district rates at significant discounts to the rates they
ordinarily recover, *see* Pl's Br. at 12.

expenditures.'" *Osterweil*, 92 F. Supp. 3d at 28 (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).

The number of hours for which P.G.'s attorneys seek compensation is reasonable. This case has involved considerable motion practice over the past year and a half. Specifically, this case has required plaintiff's counsel to brief a motion for a preliminary injunction, a motion to seal, and a motion to supplement the complaint, each of which faced opposition from defendants. Most notably, plaintiff's preliminary injunction motion required substantial evidentiary showings, including declarations from several experts.

Additionally, plaintiff's attorneys have exercised their own billing judgment by voluntarily imposing across-the-board billing reductions of 10%, *see* Dkt. No. 97-2 ¶ 8; excluding hours expended on this case by senior attorneys, law clerks, and paralegals, *id.* 14-15; and excluding 58.9 billable hours for time spent litigating discovery disputes—even though he is entitled to seek recovery for those hours, *id.* 14 & n.8.

Finally, as defendants concede, Dkt. 102-4 at 19, the Court determined P.G.'s preliminary injunction motion on the merits. Indeed, in the PI Order, the Court considered plaintiff's claims, evaluated his likelihood of success on the merits, and concluded that he was likely to succeed. *See P.G. v. Jefferson Cnty., New York*, 2021 WL 4059409, at *4-5 (N.D.N.Y. Sept. 7, 2021).

Defendants' attempts to reduce P.G.'s fee award by 75 percent are unpersuasive.  Beyond claiming in conclusory fashion that the fee request is "excessive" and "well beyond what is reasonable," defendants do little to explain why such a substantial reduction would be necessary.[3]  Defendants do not contest plaintiff's counsel's billing rates, billing records, or, for the most part, the hours they worked.  Failure to challenge these aspects of the fee application counsels against defendants' requested fee reduction.  *See Doe v. E. Lyme Bd. of Educ.*, 2020 WL 1274774, at *2 (D. Conn. Mar. 17, 2020) (refusing to apply general reductions to fee award "in the absence of any argument by Defendant regarding specific billing entries or practices"); *LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010) (declining to reduce fee award based on defendants' "object[ion] to unspecified 'excessive billing'"); *Todaro v. Siegel Fenchel & Peddy, P.C.*, 697 F. Supp. 2d 395, 402 (E.D.N.Y. 2010) (refusing to "scour" attorney's billing records to "uncover . . . supposed abuses" without "specific reference to . . . disputed entries").

Moreover, defendants' other argument—that P.G.'s counsel overstaffed this case—ignores that many of these attorneys performed limited work and only seek limited fees.  As this Court has explained, it is not unreasonable for

---

[3] Defendants also fail to articulate any specific objections to the costs plaintiff seeks to recover.

multiple attorneys to work on a case contemporaneously. *See, e.g., Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 206 (N.D.N.Y. 2019) ("[T]he use of multiple attorneys and consultation between attorneys [is] appropriate").

Accordingly, P.G. has met his burden of supporting the hours his attorneys worked as well as their hourly rates.  There is no basis for reducing this award beyond the level that plaintiff's attorneys already have through their exercise of billing judgment.

Defendants' remaining attempts to challenge P.G.'s fee request are similarly futile.  First, defendants contend that plaintiff is not a prevailing party because this case is now moot.  This argument fails in light of well-established precedent.  As the Second Circuit and courts in this district have held, "a plaintiff who achieves relief, even if only interim relief, does not lose prevailing party status is there is a later determination … that the case is moot." *Kirk v. New York State Dep't of Educ.*, 644 F.3d 134, 137 n.3 (2d Cir. 2011) (citing *Haley*, 106 F.3d at 483; LaRouche v. Kezer, 20 F.3d 68, 75 (2d Cir. 1994)); *see also, e.g., Trudeau v. Bockstein*, 2008 WL 3413903, at *3 (N.D.N.Y. Aug. 8, 2008) ("[A] plaintiff is entitled to prevailing party status when he initially succeeds in obtaining a preliminary injunction," even if "the need for injunctive relief is mooted by subsequent developments"); *N.Y. State Chapter of Am. Coll. of Emergency Physicians v. Wing*, 987 F. Supp. 127, 130 (N.D.N.Y. 1997) ("In cases involving a moot claim," the plaintiff is the

prevailing party where "the court grants a preliminary injunction after taking up the merits of the claim"). Indeed, courts routinely award attorney's fees to parties that have secured preliminary injunctions in cases that later became moot. *See, e.g.*, *Haley*, 106 F.3d at 483-84; *HomeAway.com, Inc. v. City of New York*, 523 F. Supp. 3d 573, 584-85 (S.D.N.Y. 2021); *Parish v. Kosinski*, 2018 WL 1475222, at *3 (N.D.N.Y. Feb. 5, 2018), *report and recommendation adopted*, 2018 WL 1474366 (N.D.N.Y. Mar. 26, 2018).

Defendants next assert that P.G. only secured *de minimis* or technical relief. In support, defendants claim that they ensured his access to MOUD treatment even before the PI Order and that on October 7, 2021—just over a month after the PI Order—Governor Hochul signed Corrections Law § 626 into effect. In defendants' view, then, the PI Order had only a minimal impact on the parties' relationship.

However, the notion that P.G. secured only *de minimis* or technical relief is belied by the record. As the PI Order notes, "[d]efendants object[ed]" to allowing plaintiff to receive his treatment at the jail on Sundays, when the local MOUD clinic was closed. PI Order at 7. The PI Order further observed that "the actual evidence in the record … establishes that the County does not provide methadone to non-pregnant people" at the jail. *Id*. at 12. Accordingly, when the Court ordered defendants to provide plaintiff with his

prescribed treatment on each day of his detention, it granted meaningful relief sufficient to support the fee award that he now seeks.

Moreover, defendants' claim that Corrections Law § 626 rendered P.G.'s relief unmeaningful ignores that this provision did not become effective until October 2022—months after plaintiff concluded his time in jail.  *See* N.Y. Correct. Law § 626 (effective Oct. 7, 2022); Dkt. No. 102-1 ¶ 47 ("The bill . . . became effective October 7, 2022").  Thus, it had no bearing on the relief that plaintiff sought and ultimately received.

In sum, P.G. qualifies as a prevailing party in this action, and the relief he received through the Preliminary Injunction Decision was not *de minimis*.

### B. Defendants' Motion for Summary Judgment

Defendants expend much effort moving for summary judgment, arguing that P.G.'s release from custody has rendered this case moot.  Plaintiff does not dispute that this case is moot following his release.  Accordingly, the Court will dismiss the Second Amended Complaint, but declines to reach the merits arguments that defendants also raise in their summary judgment motion because it is well-settled that "a federal court has no authority to give opinions about moot questions." *Dean v. Blumenthal*, 577 F.3d 60, 64 (2d Cir. 2009).

### III. <u>CONCLUSION</u>

Therefore, it is

ORDERED that

1.  Plaintiff's motion for attorney's fees and costs is GRANTED;

2.  Plaintiff may recover $153,783.45 in attorney's fees and $7,786.68 in costs for a total of $161,570.13.

3.  Defendants' motion for summary judgment is DENIED AS MOOT;

4.  The Second Amended Complaint is DISMISSED AS MOOT.

The Clerk of Court is directed to enter judgment in the sum of $161,570.13 and close the file.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  May 15, 2023
        Utica, New York.

12